UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IME WATCHDOG, INC.,<br><br>                    Plaintiff,<br><br>          -against-<br><br>JEFF BEIBEN, et al.,<br><br>                    Defendants. | |

25-CV-10218 (VSB) (RFT)

**OPINION & ORDER**
**REPORT & RECOMMENDATION**

**TO THE HONORABLE VERNON S. BRODERICK, United States District Judge:**

Plaintiff IME WatchDog, Inc. ("WatchDog") brings claims against Defendants Jeff Beiben, Mark Purificati, Fari Gutierrez, Christian Hogarth, Tiffany Uribe, and David Segovia (together, the "Individual Defendants") and Direct IME Services LLC ("Direct IME") for violation of the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836 ("DTSA") and for New York misappropriation of trade secrets, unfair competition, unjust enrichment, civil conspiracy, and conversion. (*See* ECF 1, Compl.) Pending before the Court are Defendants' motions to dismiss the complaint ("Complaint") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim and Defendants' motion to stay discovery. (*See* ECF 17, Individual Defs.' Mot. To Dismiss; ECF 18, Individual Defs.' Mot. To Stay Discovery; ECF 32, Direct IME's Notice of Mot. To Dismiss.) Having carefully reviewed the parties' submissions, and for the reasons set forth below, I respectfully recommend that the motions to dismiss (ECF 17, 32) should be GRANTED. The motion to stay discovery (ECF 18) is GRANTED.

**I.**

**<u>FACTUAL BACKGROUND</u>**

For purposes of the pending motions to dismiss, the Court must accept Plaintiff's well-pleaded allegations as true and draw all reasonable inferences in its favor. *See City of Providence v. BATS Glob. Mkts., Inc.*, 878 F.3d 36, 48 (2d Cir. 2017).[1] I summarize Plaintiff's allegations below.

Daniella Levi is a personal injury attorney and the president of Daniella Levi & Associates, P.C. (*See* ECF 1, Compl. ¶ 30.) Since 2002, Mrs. Levi has been frustrated by insurance carriers' use of independent medical examinations ("IMEs") to win cases. (*See id*. ¶¶ 31-32.) Her injured clients who attended IMEs would often report that the "so-called examination generally lasted for only a few minutes" but nonetheless led to "voluminous reports detailing how either Mrs. Levi's clients' injuries were not causally related to the accident, or that they [were] completely healed." (*Id*. ¶ 34.) Clients typically attended IMEs alone. (*See id*. ¶ 37.) In the hope of "keep[ing] the IME process honest," Mrs. Levi decided to launch WatchDog in May 2011. (*Id*. ¶¶ 40-41, 56.)

WatchDog provides "watchdogs," or observers, for personal injury law firms to accompany clients to IMEs and "report back about what did and did not occur during those IMEs." (*Id*. ¶¶ 36, 41-42.) Mrs. Levi started the IME observer business from scratch. (*See id*. ¶ 43.) She created the business concept, developed report forms for different types of IMEs, established price lists and recruitment and training procedures, and built a connection-rooted

---

[1]    Unless otherwise indicated, this document omits internal quotation marks, alterations, and citations from quoted text.

customer database. (*See id.* ¶¶ 43-45.) Plaintiff alleges that these documents and checklists are "confidential and proprietary, and took great costs and efforts to create." (*Id.* ¶ 46.) Plaintiff also alleges that the secrecy of this information is critical to its independent economic value. (*See id.* ¶ 65.)

From the beginning, WatchDog employed Adam Rosenblatt, first as an administrative assistant, then as an observer at IMEs, and eventually as company president. (*See id.* ¶¶ 60-61.) Mr. Rosenblatt was the only individual, other than Mrs. Levi, who had access to WatchDog's confidential and proprietary documents and databases. (*See id.* ¶¶ 62-63.)

At first, the insurance industry tried to keep observers out of exam rooms, including by cancelling appointments if a client was accompanied by an observer, filing motions to exclude observers from exam rooms, and trying to preclude observers from testifying at trial. (*See id.* ¶¶ 47-48.) "After costly legal battles to successfully fight for its right to exist, WatchDog has spent over a decade marketing its services and cultivating relationships with its customers." (*Id.* ¶ 58.) WatchDog has also taken care to keep its proprietary information and databases secret and confidential. (*See id.* ¶ 64.) Access to database information, including the client and customer identities, contact information, preferences, financial information, and pricing, was kept confidential and restricted to Mrs. Levi and Mr. Rosenblatt. (*See id.* ¶¶ 61-64.)

IME Companions LLC ("Companions") is a competitor third-party IME service company started by Safa and Vito Gelardi (together, the "Gelardis"). (*See id.* ¶ 10.) On or about January 28, 2022, Mrs. Levi received a text message from Carlos Roa, a Companions employee, asking to meet to "discuss the decline in revenues of IME WatchDog." (*Id.* ¶¶ 68-69.)  At a February 2, 2022 meeting, Roa presented Mrs. Levi with "compelling documentary evidence" that, since

3

June or July 2016, "Rosenblatt had been selling information related to [WatchDog's] customers" and WatchDog's financial information to Companions. (*Id*. ¶¶ 69-70.) Plaintiff learned that the Gelardis had paid Mr. Rosenblatt for WatchDog's confidential information, including "customer lists, financial information, and details about customers." (*Id*. ¶ 73.) Obtaining WatchDog's confidential information enabled Companions to duplicate "operational, service, and development techniques" that it had taken WatchDog many years to establish. (*Id*. ¶ 75.)

On February 25, 2022, Plaintiff filed suit in federal court in the Eastern District of New York against, among others, the Gelardis and Companions (the "Gelardi Action"), alleging, among other claims, violation of the DTSA and misappropriation of trade secrets under New York common law and seeking related injunctive relief. *See* Complaint, *IME WatchDog Inc. v. Gelardi*, No. 22-CV-1032 (PKC) (JRC) (E.D.N.Y. Feb. 25, 2022), Dkt. No. 1. Defendants in the present case were not named as defendants in the Gelardi Action. *See generally id*.; First Amended Complaint, *IME WatchDog Inc. v. Gelardi*, No. 22-CV-1032 (PKC) (JRC) (E.D.N.Y. Oct. 13, 2022), Dkt. No. 114; Second Amended Complaint, *IME WatchDog Inc. v. Gelardi*, No. 22-CV-1032 (PKC) (JRC) (E.D.N.Y. Apr. 28, 2023), Dkt. No. 203.

On May 13, 2022, Judge Pamela K. Chen issued a preliminary injunction that barred the Gelardis and Companions from continuing the Companions business and from conducting business with certain customers that the Gelardis and Companions had identified by using information obtained from Plaintiff. *See* Memorandum & Order, *IME WatchDog Inc. v. Gelardi*, No. 22-CV-1032 (PKC) (JRC) (E.D.N.Y. May 13, 2022), Dkt. No. 66. The preliminary injunction did not stop the Gelardis from attempting to use and continuing to benefit from Plaintiff's

confidential information. (ECF 1, Compl. ¶ 23.) The misappropriation by Defendants in this case was allegedly committed to circumvent Judge Chen's preliminary injunction order. (*Id*. ¶ 11.)

Following entry of the preliminary injunction, Gutierrez, at Safa Gelardi's directive, created Client Exam Services LLC ("CES"), and Beiben worked as a watchdog for CES for the same customers he had served while working at Companions. (*See id*. ¶¶ 13-14.) Plaintiff eventually learned about CES, after which Safa Gelardi started another business, IME Legal Reps. (*See id*. ¶ 15.) IME Legal Reps was also operated by Beiben, employed the same watchdogs used by Companions, and provided services to the customers that the Gelardis and Companions were enjoined from serving. (*See id*. ¶¶ 16-17.) Plaintiff learned about IME Legal Reps as well, but the Gelardis "utilized Defendant Purificati to open [yet another] new business, Direct IME," which used the same observers used by Companions, CES, and IME Legal Reps and which served the customers that the Gelardis and Companions were enjoined from serving. (*Id*. ¶¶ 18-20.) Individual Defendants' performance of IME observer services "through Companions, CES, Accompanied Exam Services, IME Management & Consulting LLC, the IME Company, IME Legal Rep, and Direct IME" was a "mere continuation of the work they performed for [the Gelardis] through Companions." (*Id*. ¶¶ 84-85.)

## II.

## <u>PROCEDURAL HISTORY</u>

On December 10, 2025, Plaintiff filed the Complaint, alleging claims for violation of the DTSA and New York misappropriation of trade secrets, unfair competition, unjust enrichment, civil conspiracy, and conversion, and seeking damages and injunctive relief. (*See generally* ECF 1,

Compl.) There is no overlap between Defendants in this case and the defendants in the Gelardi Action in the Eastern District of New York.

Between December 16 and 18, 2025, Plaintiff served all Defendants, and responses to the Complaint were due between January 5 and 8, 2026. (*See* ECF 7-11, 13-14.) On January 9, 2026, I issued an Order on my own initiative (sua sponte), extending Defendants' time to respond to the Complaint retroactively (nunc pro tunc) until January 23, 2026 and directing Plaintiff to serve a copy of the summons, Complaint, and my order on Defendants by mail and to file proof of service by January 13, 2026. (*See* ECF 15, Order.)

On January 10, 2026, Individual Defendants filed a motion to dismiss the Complaint and a letter-motion for a protective order staying "forensic discovery" until the resolution of the motion to dismiss. (*See* ECF 17, Individual Defs.' Mot. To Dismiss; ECF 18, Individual Defs.' Mot. To Stay Discovery.) On January 23, 2026, Individual Defendants filed a letter-motion for leave to file a supplemental memorandum in further support of their motion to dismiss, primarily addressing a statute of limitations defense to Plaintiff's DTSA claims. (*See* ECF 27, Letter-Mot. on DTSA Statute of Limitations.) On February 20, 2026, Direct IME, which had received an extension of time to secure counsel and respond to the Complaint (ECF 25), timely joined Individual Defendant's motion to dismiss. (*See* ECF 32, Direct IME's Notice of Mot. To Dismiss.)

On March 13, 2026, Plaintiff filed a memorandum of law in opposition to the motion to dismiss and the letter-motion for a protective order staying discovery. (*See* ECF 40, Pl.'s Opp.) On March 27, 2026, Direct IME submitted a reply affirmation and Individual Defendants submitted a memorandum in further support of the motion to dismiss and motion for a protective order.

6

(*See* ECF 42, Reply Affirmation of Jared M. Lefkowitz ("Lefkowitz Reply Aff."); ECF 43, Defs.' Reply).[2]

On February 27, 2026, Plaintiff was ordered to meet and confer with Defendants and file a letter on the docket addressing the position of all parties on whether this case should be transferred to the Eastern District of New York so that it could be consolidated with the Gelardi Action. (*See* ECF 36, Order.) On March 6, 2026, Plaintiff submitted a letter stating that Plaintiff, Direct IME, and Purificati agreed that this case should remain in this District, since (1) the Gelardi Action had essentially concluded, with all parties having either settled or having had case-ending sanctions imposed on them and (2) the parties differ between the two cases. (*See* ECF 37, Letter.)

### III.

### LEGAL FRAMEWORK ON A MOTION TO DISMISS

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*,

---

[2]    The Lefkowitz Reply Affirmation attaches documents filed in the Gelardi Action and a related New York state court case. (*See* ECF 42, Lefkowitz Reply Aff.) While I take judicial notice of the Gelardi Action and its filings, I do not consider the truth of statements asserted in filings in separate proceedings. *See McConkey v. Churchill Sch. and Center*, No. 24-CV-6091 (LJL), 2025 WL 2062195, at *4 n.1 (S.D.N.Y. July 23, 2025) ("Though the Court may take judicial notice of documents in the public record at the Motion To Dismiss stage, it considers them only to establish their existence and legal effect, or to determine what statements they contained [and] not for the truth of the matters asserted.").

556 U.S. at 678. In deciding a Rule 12(b)(6) motion for failure to state a claim, the Court "must accept as true all of the allegations contained in a complaint," *id*., and must draw all reasonable inferences in the plaintiff's favor. *See City of Providence*, 878 F.3d at 50. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679.

"A statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Zirvi v. Flatley*, 433 F. Supp. 3d 448, 459 (S.D.N.Y. 2020).

When defendants are pro se litigants, the Court interprets their arguments liberally, so as "to raise the strongest arguments that they suggest." *Robert Smalls Inc. v. Hamilton*, No. 09-CV-7171 (DAB) (JLC), 2010 WL 3238955, at *1 (S.D.N.Y. July 19, 2010), *report and recommendation adopted*, 2010 WL 3238963 (S.D.N.Y. Aug. 11, 2010) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)); *see also Gromina v. Kazmarck,* No. 22-CV-0744 (JPO), 2024 WL 4534710, at *3 n.2 (S.D.N.Y. Oct. 21, 2024) (holding that because the defendant was pro se, even though he did not explicitly allege a lack of federal question jurisdiction, the Court would raise the strongest arguments that he suggested).

## IV.

## __DTSA CLAIM__

**A.      Legal Principles**

The DTSA "provides a private right of action for an owner of a trade secret that is misappropriated if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." *Better Holdco, Inc. v. Beeline Loans, Inc.*, 666 F. Supp. 3d 328, 383-84 (S.D.N.Y. 2023). To state a claim for misappropriation of a trade secret, a plaintiff must allege that "(1) it possessed a trade secret, and (2) the defendant misappropriated the trade secret." *eShares, Inc. v. Talton*, 727 F. Supp. 3d 482, 491 (S.D.N.Y. 2024).

Under the DTSA, a "trade secret" includes "all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes," so long as: (1) "the owner thereof has taken reasonable measures to keep such information secret" and (2) "the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C. § 1839(3).

Trade secrets are a type of confidential information, and a party claiming that its confidential information qualifies as trade secrets is held to a higher standard than a party seeking protection of other types of confidential information. *See Elsevier Inc. v. Dr. Evidence, LLC*, No. 17-CV-5540 (KBF), 2018 WL 557906, at *4-5 (S.D.N.Y. Jan. 23, 2018). While the existence or not of a trade secret is usually treated as a question of fact and thus properly the

9

province of the jury, *see Better Holdco*, 666 F. Supp. 3d at 384, "to survive a motion to dismiss, a party alleging that it owns a trade secret must put forth specific allegations as to the information owned and its value." *Elsevier*, 2018 WL 557906, at *4. Accordingly, the alleged trade secret must be described with "sufficient specificity that its protectability can be assessed." *Id*. Pleading the existence of general categories of confidential information is not sufficient to give rise to a plausible allegation of the existence of a trade secret. *See id*. at *6.

Moreover, "[a] trade secret must be veiled in sufficient secrecy that except by use of improper means, there would be difficulty in acquiring the information." *Better Holdco*, 666 F. Supp. 3d at 385. Thus, "a plaintiff must have taken reasonable measures to keep such information secret." *Id*. (citing 18 U.S.C. § 1839(3)(A)). New York courts generally apply the six-factor test outlined in the Restatement (First) of Torts to determine whether information constitutes a trade secret under both the DTSA and state law:

> (1) the extent to which the information is known outside of the business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken by the business to guard the secrecy of the information; (4) the value of the information to the business and to its competitors; (5) the amount of effort or money expended by the business in developing the information; [and] (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

*Iacovacci v. Brevet Holdings, LLC*, 437 F. Supp. 3d 367, 380 (S.D.N.Y. 2020). These factors reflect the understanding that the "most important consideration in determining whether information is a trade secret is whether the information was secret." *Catalyst Advisors, L.P. v. Catalyst Advisors Invs. Glob. Inc.,* 602 F. Supp. 3d 663, 672 (S.D.N.Y. 2022).

The DTSA defines "misappropriation" as the "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper

means" or the "disclosure or use of a trade secret of another without express or implied consent by a person who," among other requirements, "at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was . . . derived from or through a person who had used improper means to acquire the trade secret." 18 U.S.C. § 1839(5). "Improper means" includes "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means," but excludes "reverse engineering, independent derivation, or any lawful means of acquisition." 18 U.S.C. § 1839(6).

A civil action for violation of the DTSA must be brought no later than three years after the misappropriation "is discovered or by the exercise of reasonable diligence should have been discovered." 18 U.S.C. § 1836(d). "[I]n other words," the statute of limitations begins to run "when the plaintiff knew or should have known that the alleged trade secrets were wrongfully acquired, disclosed, or used." *Zirvi*, 433 F. Supp. 3d at 459. A continuous course of misappropriation constitutes a single claim of misappropriation. *See* 18 U.S.C. § 1836(d). Courts apply this continuous misappropriation rule to each defendant individually. *See Houser v. Feldman*, 569 F. Supp. 3d 216, 226 (E.D. Pa. 2021) (holding that the misappropriation of one defendant does not trigger the statute of limitations for subsequent acts of another defendant).

**B.      Analysis**

1.      The Timeliness of the DTSA Claim

Defendants argue that Plaintiff's DTSA claim is barred by the DTSA's three-year statute of limitations, because the claim accrued in February 2022, when Plaintiff learned that Companions and the Gelardis had been misappropriating Plaintiff's trade secrets. (*See* ECF 27,

11

Letter-Mot. on the DTSA Statute of Limitations at 4-5.) Plaintiff counters that the misappropriation by Defendants took place after and independent of earlier misappropriation by Companions and the Gelardis, so that the limitations period for the DTSA claim against Defendants did not begin running in February 2022. (*See* ECF 40, Pl.'s Opp. at 16.) Plaintiff asserts that misappropriation of trade secrets by one party does not trigger the statute of limitations for claims based on subsequent acts of misappropriation by another party. (*See id*. at 17.) Plaintiff concludes that the Complaint adequately alleges that Individual "Defendants' misappropriation occurred through CES, IME Legal Reps, and then Direct IME," entities formed after Plaintiff learned of the original misappropriation by Companions and the Gelardis; Plaintiff notes that CES was not formed until March 16, 2023, so that "any misappropriation by Defendants in connection with CES" must have happened after that date. (*Id*.)

Plaintiff's logic is sound with respect to its claim against Direct IME: Plaintiff alleges that Direct IME was formed after CES and that CES was not formed until March 16, 2023, so that Direct IME did not exist until sometime after that date. Plaintiff's DTSA claim against Direct IME could not have accrued before that entity existed, even under the continuing misappropriation provision in Section 1836. The analysis in *Houser* is instructive on this point. The court dismissed the DTSA claim against one defendant but not the other on the ground that the statute of limitations had run. *See* 569 F. Supp. 3d at 225. Although the claims against each defendant arose out of the same trade secrets, the court reasoned that misappropriation by one defendant did not "trigger the statute of limitations for the subsequent acts of another defendant." *Id*. at 226. The *Houser* court adopted the "relationship school of thought," which "premises harm based on the violation of a relationship in which the trade secret owner had

reason to believe that the information would be kept in confidence"; under this theory, "subsequent misappropriations [by the same defendant] do not further breach the relationship [and thus] do not constitute independent claims." *Id*. at 225.

Applying the logic of *Houser* to this case, I conclude that, while the Complaint alleges that Direct IME received Plaintiff's trade secrets from the Gelardis, and that Plaintiff's DTSA claim against the Gelardis accrued in February 2022 (*see* ECF 1, Compl. ¶¶ 69-70), the Gelardis' misappropriation is distinct from Direct IME's alleged misappropriation, because "the breach of one relationship should not be dispositive for the breach of another." *Houser*, 569 F. Supp. 3d at 226. Direct IME was not named as a defendant in the Gelardi Action. Nor could it have been since, according to Plaintiff, it was the preliminary injunction in the Gelardi Action that prompted the Gelardis to create CES and its successor businesses, including Direct IME, to allow the Gelardis to "continue to benefit" from Plaintiff's stolen trade secrets. (ECF 1, Compl. ¶ 23.) This is thus when the statute of limitations period for Direct IME would have begun to run. The clock on the Plaintiff's trade secrets claim against Direct IME could not have begun to run after Mrs. Levi's meeting with Roa in 2022, since Direct IME had not yet been established at the time. (*See id*. ¶ 7.)

As to Individual Defendants, Plaintiff alleges that they gained access to Plaintiff's trade secrets "by virtue of the services they performed for the Gelardis at Companions." (ECF 1, Compl. ¶ 86.) The statute of limitations for Plaintiff's claims against Individual Defendants began to run when Plaintiff learned or reasonably should have discovered that its trade secrets were "wrongfully acquired, disclosed, or used" by Individual Defendants. *Zirvi*, 433 F. Supp. 3d at 459. The Complaint does not contain any allegations about when Plaintiff discovered that

Individual Defendants were employees of Companions, which would be the earliest possible time that Plaintiff should reasonably have discovered its claims against Individual Defendants. Accordingly, the Complaint does not on its face support an inference that Plaintiff's DTSA claims against Individual Defendants are time barred.

      2.      <u>Possession of a Trade Secret</u>

Plaintiff bases its DTSA claim on the alleged misappropriation of "customer lists, financial information, and details about customers," including customer preferences and pricing, observer forms and checklists, and marketing strategies. (ECF 1, Compl. ¶¶ 72, 88, 95, 112.) Defendants do not appear to contest that Plaintiff has sufficiently alleged that it maintained the secrecy of this confidential information by restricting it to a handful of employees. (*See id*. ¶ 128). Rather, Defendants argue that Plaintiff has not adequately alleged that its confidential information rose to the level of trade secrets, because the Complaint describes Plaintiff's information in "broad, categorical terms." (ECF 17, Individual Defs.' Mot. To Dismiss at 4.) Defendants are correct that alleging the existence of general confidential information is not enough to support a claim for misappropriation of trade secrets. *See Garvey v. Face of Beauty LLC*, 634 F. Supp. 3d 84, 96-97 (S.D.N.Y. 2022) (collecting cases). Courts in the Second Circuit "routinely require that plaintiffs plead their trade secrets with sufficient specificity to inform the defendants of what they are alleged to have misappropriated." *eShares*, 727 F. Supp. 3d at 492.

Plaintiff does not seem to dispute that the Complaint describes the claimed trade secrets as broad categories of confidential information. Indeed, Plaintiff acknowledges that "[t]he Complaint does not speculate about whether trade secrets exist" and instead relies on the finding by Judge Chen in the Gelardi Action, after discovery and a preliminary injunction

hearing, that Plaintiff's "customer lists, pricing, operational data, and business methods constitute protectable trade secrets." (ECF 40, Pl.'s Opp. at 1, 3.) Plaintiff's approach is akin to an argument that Defendants are collaterally estopped from disputing that the Complaint adequately pleads the existence of trade secrets. But Plaintiff's success in obtaining a preliminary injunction in another case against other parties does not excuse Plaintiff from meeting the pleading requirements in this case.

The law of collateral estoppel is instructive in this regard. "The doctrine . . . precludes a party from relitigating an issue which has previously been decided against him in a proceeding in which he had a fair opportunity to fully litigate the point." *Kaufman v. Eli Lilly & Co.*, 65 N.Y.2d 449, 455 (1985). The two requirements for its application are that the identical issue necessarily must have been decided in the prior action and must be decisive in the present action, and that the party to be precluded must have had a full and fair opportunity to contest the prior determination. *See id*. Because Defendants here were not parties to Gelardi Action and had no opportunity to litigate the trade secret issue, they should not be precluded from arguing that the Complaint fails adequately to allege that Plaintiff's confidential information constituted trade secrets based on a ruling that Plaintiff in the Gelardi Action was likely to succeed on the merits of its DTSA claim.[3] Plaintiff should be required to include sufficient concrete particulars from its showing in the Gelardi Action on the trade secret issue in a complaint in this action to adequately plead the existence of trade secrets.

---

[3]     Plaintiff's reliance on rulings in the Gelardi Action is in tension with its position that Plaintiff's claims against Defendants are timely because Plaintiff's knowledge of misappropriation of trade secrets by the Gelardis did not start the running of the statute of limitations for Plaintiff's claims against Defendants.

3.    Misappropriation of a Trade Secret

Because I recommend that Your Honor allow Plaintiff to replead, I address whether the Complaint adequately pleads misappropriation under the DTSA. Defendants argue that even if Plaintiff has properly alleged that Plaintiff's confidential information qualifies as trade secrets, Plaintiff has not sufficiently alleged that Defendants misappropriated any trade secrets, because Plaintiff does not identify any specific instance where a particular Defendant acquired a specific identified trade secret by improper means or used an identified trade secret with the requisite knowledge. (*See* ECF 17, Individual Defs.' Mot. To Dismiss at 4.)

Plaintiff counters that the Complaint sufficiently alleges that Defendants, "through their employment or agency relationship with [the Gelardis'] various alter egos of Companions, disseminated and used the same trade secrets that [the Gelardis] unlawfully misappropriated." (ECF 40, Pl.'s Opp. at 1.) Plaintiff goes on to explain that the Complaint alleges that Defendants "performed services for clients on the Enjoined Customers List using Plaintiff's trade secrets" (*id*.); knew the customer lists, financial information, and details about customers that they used to run IME observer businesses were misappropriated trade secrets but used the information anyway (*see* ECF 1, Compl. ¶¶ 88-89); and "refused to produce documents when subpoenaed precisely because those documents would confirm their receipt and use of the trade secrets already adjudicated." (ECF 40, Pl.'s Opp. at 1.)

The allegation that Defendants knew that information they used was obtained unlawfully is conclusory and therefore insufficient to plead DTSA misappropriation. *See Zebra Strategies, Inc. v. Gonzalez-Nazario*, 764 F. Supp. 3d 144, 156-57 (S.D.N.Y. 2025) (concluding that the plaintiff's allegations of misappropriation were conclusory when the complaint failed

to allege facts to support a determination that the defendant possessed confidential data). Making all possible inferences in Plaintiff's favor, as I must, Individual Defendants' failure to comply with subpoenas could provide some support for an inference that Individual Defendants had guilty knowledge, but I do not think it is sufficient to push the inference from the possible to the plausible. After all, there are many reasons that a person or entity might not comply with a subpoena. I therefore examine the specific allegations relating to each Defendant. *See id*. at 156 (addressing each moving defendant separately).

Plaintiff alleges that certain Defendants held sufficiently senior positions at companies tied to the Gelardis that, viewing the allegations in light most favorable to Plaintiff, it is plausible to conclude that those Defendants must have known that the information they used in operating the companies was misappropriated. The Complaint alleges that: Gutierrez complied with Safa Gelardi's direction to start CES to circumvent the TRO in the Gelardi Action (*see* ECF 1, Compl. ¶ 13); Beiben operated CES and attended at least twelve IMEs for the same clients he had served while working at Companions (*see id*. ¶¶ 13-14); and the Gelardis used Purificati to start and operate Direct IME after IME Legal Reps was enjoined from serving certain customers, and Purificati acted as an observer on behalf of Direct IME for a client on the Enjoined Client List (*see id*. ¶¶ 18-21).

The Complaint alleges that Direct IME uses the same observers and serves the same customers on the Enjoined Customer List. (*See id*. ¶¶ 16, 20-21.) Given that the customers served by Direct IME were on the Enjoined Customer List, Plaintiff plausibly alleges that Direct IME had reason to know that it was using Plaintiff's trade secrets. *See My Mavens, LLC v. Grubhub, Inc.,* No. 20-CV-4657 (PGG), 2023 WL 5237519, at *21 (S.D.N.Y. Aug. 14, 2023) ("To

allege misappropriation by [a corporate entity], [the plaintiff] must allege facts giving rise to a plausible inference that [the entity] knew or had reason to know that the [trade secrets] were acquired through improper means.").

As to the other Individual Defendants, Plaintiff provides insufficient information from which to conclude that it was plausible as opposed to merely possible that those Individual Defendants had the requisite guilty knowledge to support a claim for violation of the DTSA. Since "there is no private cause of action under the DTSA for aiding and abetting misappropriation of trade secrets," a plaintiff must provide facts to allege that "each defendant individually misappropriated at least one trade secret." *Zebra Strategies*, 764 F. Supp. 3d at 158. The Complaint alleges that Uribe had worked at Companions and then became a Direct IME employee, and that Uribe attended an IME with someone represented by a law firm on the Enjoined Customer List. (*See* ECF 1, Compl. ¶ 21.) The Complaint does not provide a basis to infer that Uribe knew the information she had used at Companions and later at Direct IME had been misappropriated. (*See generally id*.)

The Complaint provides even less information about Segovia and Hogarth: it alleges that they worked at Companions but provides no information about where they worked subsequently or what they did, stating only that they used trade secrets "during the course of . . . performing services for [the Gelardis] and their various corporate entities." (ECF 1, Compl. ¶¶ 89, 95.) In the absence of additional information on where Segovia and Hogarth worked and in what capacities, their use of customer identity and contact information and IME observer forms and checklists is insufficient to support an inference that they knew or had reason to know that this information derived from misappropriated trade secrets.

\*\*\*

Because Plaintiff has failed adequately to plead that its confidential information constituted trade secrets, I respectfully recommend that Your Honor should GRANT the motion to dismiss as to Plaintiff's DTSA claim. And because I recommend granting the motion to dismiss Plaintiff's DTSA claim, I also respectfully recommend dismissing Plaintiff's claim for injunctive relief under the DTSA (ECF 1, Compl. at 17.).[4]

**V.**

## **SUPPLEMENTAL JURISDICTION OVER STATE LAW CLAIMS**

If Your Honor agrees that Plaintiff has failed to adequately plead claims for violation of the DTSA, Your Honor could decline to exercise supplemental jurisdiction over the remaining state law claims in the Complaint. *See Klein & Co. Futures, Inc. v. Bd. of Trade of City of N.Y.*, 464 F.3d 255, 262 (2d Cir. 2006) ("It is well settled that where, as here, the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent

---

[4]    If Your Honor disagrees that the DTSA claim should be dismissed, I respectfully recommend denying the motion to dismiss the claim for injunctive relief under the DTSA as well. I agree with Defendants that the better reasoned cases hold that "a request for . . . injunctive relief is not an independent cause of action" but rather "the remedy sought for the legal wrongs alleged in the . . . substantive counts." *Budhani v. Monster Energy Co.*, 527 F. Supp. 3d 667, 688 (S.D.N.Y. 2021); *see Espire Ads LLC v. TAPP Influencers Corp.*, 655 F. Supp. 3d 223, 243 at 243 n.2, 245 n.3, 253 n.9 (S.D.N.Y. 2023). However, a plaintiff's request for injunctive relief may proceed if the plaintiff "adequately alleges entitlement to the injunctive relief [it] seeks." *Rand v. Travelers Indem. Co.,* 637 F. Supp. 3d 55, 73 (S.D.N.Y. 2022). In seeking injunctive relief, a plaintiff must plausibly allege "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Id*. (quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)). If Plaintiff has sufficiently pleaded a DTSA claim, then it has also adequately pleaded a request for injunctive relief under the DTSA.

jurisdiction over remaining state law claims."). However, because I recommend that Plaintiff be permitted to replead the DTSA claims, *see infra* Part XI, I address the adequacy of the pleading of the state law claims on the merits.

**VI.**

**STATE LAW MISAPPROPRIATION**

**A.    Legal Principles**

"[T]he elements for a misappropriation claim under New York law are fundamentally the same as a DTSA claim." *Catalyst Advisors*, 602 F. Supp. 3d at 671. Accordingly, "courts have found that a complaint sufficiently pleading a DTSA claim . . . also states a claim for misappropriation of trade secrets under New York law." *Id*.

**B.    Analysis**

Defendants argue that the New York misappropriation claim fails for the same reasons that the DTSA claim fails: the absence of any reasonably particularized trade secrets and no individualized allegations of acquisition, use, or disclosure of a trade secret by any of the Individual Defendants. (ECF 17, Individual Defs.' Mot. To Dismiss at 7.) Plaintiff reprises its arguments that the Complaint adequately pleads trade secrets and misappropriation. (*See* ECF 40, Pl.'s Opp. at 11-12.)

Since "the elements for a misappropriation claim under New York law are fundamentally the same as a DTSA claim," Plaintiff's New York misappropriation claim fails for the same reasons as its claim for violation of the DTSA. *Catalyst Advisors,* 602 F. Supp. 3d at 671; *see Superb Motors Inc. v. Deo*, 776 F. Supp. 3d 21, 80 (E.D.N.Y. 2025) (holding that since the plaintiff's complaint failed to plead a DTSA claim in that the complaint did not plausibly allege

the existence of a trade secret, the complaint also failed to plead a misappropriation claim under New York law).

For the foregoing reasons, I respectfully recommend that Your Honor should GRANT the motion to dismiss Plaintiff's state law misappropriation claims.

**VII.**

**STATE LAW UNFAIR COMPETITION**

**A.    Legal Principles**

"The essence of an unfair competition claim under New York law is that the defendant has misappropriated the labors and expenditures of another with some element of bad faith." *Precision Medicine Grp., LLC v. Blue Matter, LLC*, No. 20-CV-2974 (PGG), 2026 WL 772907, at *7 (S.D.N.Y. Mar. 19, 2026) (quoting *Universal Instruments Corp. v. Micro Sys. Eng'g, Inc.,* 924 F.3d 32, 50-51 (2d Cir. 2019)). New York law recognizes two theories of unfair competition: palming (or passing) off, and misappropriation. *See CDC Newburgh Inc. v. STM Bags, LLC*, 692 F. Supp. 3d 205, 225 (S.D.N.Y. 2023).

To state a claim under the misappropriation theory of unfair competition, a plaintiff must allege "that the defendant: (1) misappropriated the plaintiff's labors, skills, expenditures, or good will; and (2) displayed some element of bad faith in doing so." *Barbagallo v. Marcum LLP*, 820 F. Supp. 2d 429, 446 (S.D.N.Y. 2011) (quoting *Abe's Rooms, Inc. v. Space Hunters, Inc.*, 38 A.D.3d 690, 692 (2d Dep't 2007)). An unfair competition claim and a misappropriation claim "generally rise or fall together" when the two claims arise from the same underlying facts. *Quanzhou New Hunter Bags & Luggages (Light Industry) Co., Ltd. v. Spray Moret, LLC,* No. 24-CV-9691 (JPO), 2026 WL 538578, at *4 (S.D.N.Y. Feb. 26, 2026); *Pauwels v. Deloitte LLP,* 83 F.4th 171,

185-86 (2d Cir. 2023). However, "a claim [for unfair competition] may be based on misappropriation of information not rising to [the level of trade secrets], such as client lists, internal company documents, and business strategies." *Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 209 (S.D.N.Y. 2008).

**B.    Analysis**

Defendants argue that Plaintiff's unfair competition claims "rest on the same generalized trade secret categories and the same absence of defendant-specific facts" as Plaintiff's DTSA claims and therefore fail for the same reasons as Plaintiff's DTSA and New York misappropriation claims. (ECF 17, Individual Defs.' Mot. To Dismiss at 7.) Plaintiff does not separately respond to Defendants' motion to dismiss as to the unfair competition claim. (*See generally* ECF 40, Pl.'s Opp.) Arguments "adverted to only in a perfunctory manner . . . must be deemed waived, – or more precisely, forfeited." *In re Demetriades*, 58 F.4th 37, 54 (2d Cir. 2023) (raising the forfeiture issue sua sponte). I therefore respectfully recommend that Your Honor should conclude that Plaintiff has forfeited its arguments in opposition to the motion to dismiss the state law unfair competition claim. Nevertheless, because I recommend that Plaintiff be allowed to replead, I address on the merits the adequacy of Plaintiff's pleading its state law unfair competition claim.

1.    <u>Misappropriation</u>

To begin with, the IME WatchDog customer database Plaintiff spent years establishing (*see* ECF 1, Compl. ¶¶ 44-45, 58, 86) was the result of the IME WatchDog's labor and reflected goodwill; as such, any misappropriation of the customer database can serve as a predicate for a

New York unfair competition claim. *See Berman*, 580 F. Supp. 2d at 209. Plaintiff need not plead

that its confidential information rose to the level of a trade secret for this claim. *See id*.

> 2.      Bad Faith

To sufficiently plead an unfair competition claim, Plaintiff must also allege that

Defendants "displayed some element of bad faith" in their acts of misappropriation. *Barbagallo*,

820 F. Supp. 2d at 446. Bad faith can be inferred from actual or constructive knowledge of

Plaintiff's rights. *See Bytemark, Inc. v. Xerox Corp*., 342 F. Supp. 3d 496, 511 (S.D.N.Y. 2018)

(collecting cases). For the reasons set forth above, the Complaint adequately alleges bad faith

on the part of Direct IME, Gutierrez, Beiben, and Purificati but fails adequately to allege bad

faith on the part of Uribe, Hogarth, or Segovia. *See supra* Part IV.B.3; *Insurent Agency Corp. v.*

*Hanover Ins. Co.,* No. 16-CV-3076 (LGS), 2018 WL 3979589, at *4 (S.D.N.Y. Aug. 20, 2018)

("Without notice of any misappropriated trade secrets, [the defendant] cannot have . . .

displayed bad faith in acquiring them.").

***

Based on Plaintiff's failure to respond to Defendant's arguments in support of dismissing

the unfair competition claim, I respectfully recommend that Your Honor should GRANT the

motion to dismiss Plaintiff's unfair competition claim.

**VIII.**

**UNJUST ENRICHMENT**

**A.     Legal Principles**

To state a claim for unjust enrichment in New York, a plaintiff must allege that "(1) the

defendant was enriched, (2) at the plaintiff's expense, and (3) equity and good conscience

23

militate against permitting the defendant to retain what the plaintiff is seeking to recover."

*Anderson v. Unilever United States, Inc.*, 607 F. Supp. 3d 441, 463 (S.D.N.Y. 2022) (quoting

*Briarpatch Ltd. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004)). Under New York law,

unjust enrichment claims may not be "a catchall cause of action to be used when others fail" or

to duplicate a claim for breach of contract, tort, or breach of a statute. *Anderson*, 607 F. Supp.

3d at 463. Where an unjust enrichment claim is duplicative of another claim, arises from the

same facts, and alleges the same damages, the unjust enrichment claim must be dismissed. *See*

*id*.

B.      Analysis

Defendants argue that Plaintiff's unjust enrichment claim fails because Plaintiff neglects

to plead any direct benefit conferred by WatchDog on any of the Defendants and because the

claim rehashes Plaintiff's misappropriation claims. (*See* ECF 17, Individual Defs.' Mot. To Dismiss

at 7.) Plaintiff responds that the Complaint sufficiently pleads that "Defendants have used

Plaintiff's confidential information and trade secrets, thereby enriching themselves at Plaintiff's

expense by, among other things, receiving compensation from sales of services through the use

of the same." (ECF 40, Pl.'s Opp. at 13.) Plaintiff also counters that the unjust enrichment claim is

not duplicative, because "misappropriation is not an element of a claim for unjust enrichment

under New York law," meaning that a plaintiff can decide to plead an unjust enrichment claim

instead of a misappropriation claim. (*Id*. at 14.)

Unjust enrichment claims are available "only in unusual circumstances," when no

contract, tort, or statutory claim is available. *Anderson,* 607 F. Supp. 3d at 463. Courts in this

District have not hesitated to dismiss unjust enrichment claims that are duplicative of existing

24

contract, tort, or statutory claims. *See id*.; *Wedra v. Cree, Inc.*, No. 19-CV-3162 (VB), 2020 WL 1322887, at *11 (S.D.N.Y. Mar. 20, 2020) (dismissing an unjust enrichment claim that used the "same factual allegations" as the plaintiff's statutory, contract, and tort law claims).

"The Second Circuit has stated that two claims are duplicative of one another if they arise from the same facts and do not allege distinct damages." *Cooper v. Anheuser-Busch, LLC*, 553 F. Supp. 3d 83, 115 (S.D.N.Y. 2021) (quoting *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 175 (2d Cir. 2008)); *see Bermudez v. Colgate-Palmolive Co.*, 667 F. Supp. 3d 24, 44 (S.D.N.Y. 2023) (holding that an unjust enrichment claim is duplicative if it "relies on the same conduct that forms the basis of the plaintiff's other claims"). Plaintiff's unjust enrichment claim rests on the same general factual allegations as its claim for trade secret misappropriation – that Defendants are using Plaintiff's confidential information to compete with Plaintiff and receive compensation from sales of services – to Plaintiff's detriment. (*See* ECF 1, Compl. ¶¶ 135-38**.**) Even though, as Plaintiff argues, unjust enrichment may be pleaded as an alternative theory of recovery, "it is equally true that, even pleaded in the alternative, claims for unjust enrichment will not survive a motion to dismiss where plaintiffs fail to explain how their unjust enrichment claim is not merely duplicative of their other causes of action." *Bermudez*, 667 F. Supp. 3d at 45; *Campbell v. Whole Foods Mkt. Grp., Inc.*, 516 F. Supp. 3d 370, 394 (S.D.N.Y. 2021) (rejecting the argument that the unjust enrichment claim was brought in the alternative and dismissing the claim as duplicative). Plaintiff has not distinguished its unjust enrichment claim from its trade secret misappropriation claims, and the unjust enrichment claim seeks the same damages. Accordingly, the unjust enrichment claim should be dismissed. *See Patellos v. Hello Prods., LLC*,

523 F. Supp. 3d 523, 537 (S.D.N.Y. 2021) (dismissing an unjust enrichment claim because

plaintiffs "d[id] not distinguish their unjust enrichment claim from their other claims").

For the foregoing reasons, I respectfully recommend that Your Honor should GRANT the

motion to dismiss as to Plaintiff's unjust enrichment claim.

IX.

<strong><u>CIVIL CONSPIRACY</u></strong>

**A.      Legal Principles**

To state a claim for civil conspiracy under New York law, a plaintiff must allege "the

primary tort, plus the following four elements: (1) an agreement between two or more parties;

(2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the

furtherance of a plan or purpose; and (4) resulting damage or injury." *Medtech Prods. Inc. v.

Ranir, LLC*, 596 F. Supp. 2d 778, 794 (S.D.N.Y. 2008). Civil conspiracy is not an independent

cause of action under New York law – courts only recognize "an action for civil conspiracy if it is

connected to a separate underlying tort." *Fisk v. Letterman*, 424 F. Supp. 2d 670, 677 (S.D.N.Y.,

2006) (dismissing a civil conspiracy claim because the plaintiff failed adequately to allege that

the defendant committed an independent tort against her and because she failed to offer more

than conclusory assertions of the defendant's involvement in the purported conspiracy). For a

civil conspiracy claim to survive a motion to dismiss, "the complaint must allege some factual

basis for a finding of a conscious agreement among the defendants" to commit the underlying

tort. *Hecht v. Com. Clearing House, Inc.,* 897 F.2d 21, 26 n.4 (2d Cir. 1990) (affirming dismissal of

a civil RICO conspiracy claim on the ground that the plaintiff had failed to allege facts suggesting

an agreement among the defendants).

26

**B.       Analysis**

Defendants argue that Plaintiff's civil conspiracy claim should be dismissed because New York law does not recognize civil conspiracy as an independent tort (*see* ECF 17, Individual Defs.' Mot. To Dismiss at 8) and because Plaintiff alleges no nonconclusory facts showing an agreement among the Defendants or any overt act taken by any Defendant in furtherance of an agreement. (*See* ECF 43, Defs.' Reply at 3.) Plaintiff counters that "a claim for civil conspiracy is a cognizable cause of action under New York law," and maintains that Plaintiff adequately "plead[ed] an independently viable tort and discuss[ed] how the individual Defendants together conspired to disseminate and utilize Plaintiff's trade secrets." (ECF 40, Pl.'s Opp. at 14-15.)

A plaintiff may state a claim for civil conspiracy to commit an underlying tort, and Plaintiff has identified several possible such torts, but Plaintiff's civil conspiracy claim fails because Plaintiff has not adequately alleged an agreement among Defendants or an overt act in furtherance of the conspiracy. Plaintiff alleges only that "Defendants conspired with each other" to "obtain[ ] and us[e] Plaintiff's confidential information to compete with Plaintiff." (ECF 1, Compl. ¶ 140.)  This allegation is entirely conclusory, and it therefore is insufficient to support the civil conspiracy claim. *See Ciambriello v. County of Nassau,* 292 F.3d 307, 325 (2d Cir. 2002) (explaining that "complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy . . . are properly dismissed"); *Hecht,* 897 F.2d at 26 n.4. Similarly, Plaintiff makes the conclusory allegations that "[e]ach Defendant performed an overt act in furtherance of the conspiracy," and that the "unlawful conduct alleged herein . . . [was] committed in furtherance of that conspiracy." (ECF 1, Compl. ¶¶ 144-45). These allegations identify no specific overt acts and merely restate the overt act element of a civil

conspiracy claim. *See Ritchie Cap. Mgmt., L.L.C. v. Gen. Elec. Cap. Corp.*, 121 F. Supp. 3d 321, 340 (S.D.N.Y. 2015) (dismissing the plaintiff's civil conspiracy claim for failure to allege an overt act), *aff'd*, 821 F.3d 349 (2d Cir. 2016). For the foregoing reasons, I respectfully recommend that Your Honor should GRANT the motion to dismiss as to Plaintiff's civil conspiracy claim.

**X.**

**CONVERSION**

**A.      Legal Principles**

Under New York law, "[c]onversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 403-04 (2d Cir. 2006). The claim includes a "denial or violation of the plaintiff's dominion, rights, or possession" over their property, so that "the defendant exclude[s] the owner from exercising [its] right over the goods." *Id*. at 404.

**B.      Analysis**

Defendants contend that Plaintiff's conversion claim fails because Plaintiff has not sufficiently pleaded "a specific, identifiable item of property and wrongful dominion" and because the claim "is duplicative of [Plaintiff's] trade-secret theory." (ECF 17, Individual Defs.' Mot. To Dismiss at 8.) Plaintiff responds that "[a]n allegation that a defendant exercised unauthorized dominion over a plaintiff's confidential information or trade secrets to the detriment of the plaintiff is sufficient to proceed with a conversion claim" and that a conversion claim can be pleaded "in the alternative to a misappropriation of trade secret claim." (ECF 40, Pl.'s Opp. at 15.)

28

To state a claim for conversion, a plaintiff must allege both its possessory right in the property and the defendant's dominion over or interference with the property in derogation of the plaintiff's rights. *See Zamora v. FIT Int'l Grp. Corp.*, 834 F. App'x 622, 628-29 (2d Cir. 2020). The Complaint contains vague references to customer lists, customer details, and financial information. (*See* ECF 1, Compl. ¶¶ 88.) Defendants are correct that the Complaint fails sufficiently to identify the specific property that Defendants allegedly converted, which is fatal to Plaintiff's conversion claim. *See Berman*, 580 F. Supp. 2d at 206-07 (dismissing a counterclaim that failed to identify the property that was allegedly converted); *Volt Delta Res. LLC v. Soleo Commc'ns Inc.*, 816 N.Y.S.2d 702 (Table), at *3 (N.Y. Sup. Ct. N.Y. Cnty. 2006) ("The plaintiff must allege that the defendant converted a specific, identifiable piece of property in order to sustain the cause of action.").

Plaintiff's assertion that Defendants "exercised unauthorized dominion over Plaintiff's confidential information and trade secrets to the detriment of Plaintiff" and "to the exclusion of Plaintiff's rights" (ECF 1, Compl. ¶¶ 151-152) merely restates the elements of a conversion claim, which is an independent reason why the conversion claim should be dismissed. *See Zamora*, 834 F. App'x at 629 ("Plaintiffs do little more than plead the elements of the cause of action with respect to their conversion claim, which does not suffice.").

And Plaintiff makes no non-conclusory allegation that Defendants deprived Plaintiff of "dominion, rights, or possession" over its property, which is a further reason why the conversion claim should be dismissed. *Thyroff,* 460 F.3d at 404. Courts in this District have dismissed conversion claims based on a defendant's copying of intellectual property, holding that "possess[ing] only a copy of the client list . . . did not, in any way, limit or otherwise deprive

[the plaintiff] of possession or use of that list." *Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*, 813 F. Supp. 2d 489, 536 (S.D.N.Y. 2011); *Fischkoff v. Iovance Biotherapeutics, Inc.*, 339 F. Supp. 3d 408, 414 (S.D.N.Y. 2018) ("None of this language suggests that pure copying is sufficient to state a claim of conversion.").

For the foregoing reasons, I respectfully recommend that Your Honor should GRANT the motion to dismiss as to Plaintiff's conversion claim.

## XI.

### LEAVE TO AMEND

Plaintiff has not requested leave to amend, and the Court is not obligated to grant such leave on its own initiative. *See, e.g., Trautenberg v. Paul, Weiss, Rifkind, Wharton & Garrison L.L.P.*, 351 F. App'x 472, 474 (2d Cir. 2009). A "plaintiff need not be given leave to amend" where, as here, it "fails to specify . . . how amendment would cure the pleading deficiencies in [its] complaint." *Moniodes v. Autonomy Cap. (Jersey) LP*, No. 20-CV-5648 (GHW), 2021 WL 3605385, at *8 (S.D.N.Y. Aug. 11, 2021) (quoting *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014)). However, "in this circuit, it is the usual practice upon granting a motion to dismiss to allow leave to replead." *Leneau v. Ponte*, No. 16-CV-0776 (GHW), 2018 WL 566456, at *18 (S.D.N.Y. Jan. 25, 2018) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991)).

Of course, "leave to amend a complaint may be denied when amendment would be futile." *Tocker v. Philip Morris Cos.*, 470 F.3d 481, 491 (2d Cir. 2006); *see also Moniodes*, 2021 WL 3605385, at *8. "Generally, amendment is treated as futile if the proposed claim could not withstand a motion to dismiss." *United States ex rel. Hussain v. CDM Smith, Inc.*, No. 14-CV-9107

(JPO), 2018 WL 11217206, at *1 (S.D.N.Y. Jan. 31, 2018). Plaintiff's unjust enrichment claim has a substantive flaw that cannot be fixed with better drafting: it is duplicative of the claims for misappropriation under the DTSA and state law. Amendment of this claim would be futile.

However, I cannot conclude that it would necessarily be futile for Plaintiff to amend the claims for violation of the DTSA (Count I) with injunctive relief (Count II) and for New York misappropriation of trade secrets (Count III), unfair competition (Count IV), civil conspiracy (Count VII), and conversion (Count VIII).

As to the DTSA claim and the claim for New York misappropriation of trade secrets, Plaintiff may be able to include specific allegations about the information Plaintiff owned and the value of that information, rather than impermissibly relying on the Gelardi Action to establish the existence of trade secrets. And Plaintiff may be able to add allegations that all Defendants knew or had reason to know that the information they used contained trade secrets.

I cannot conclude that amendment of the New York unfair competition claim to replead the claim against Direct IME, Gutierrez, Beiben, and Purificati and to include more information about Uribe, Hogarth, and Segovia would necessarily be futile. Plaintiff may be able to include allegations about where Uribe, Segovia, and Hogarth worked, what confidential information they used, and what services they performed using that confidential information.

As to the New York civil conspiracy claim, Plaintiff may be able to allege specific facts explaining a basis to conclude that Defendants reached an agreement to commit the underlying torts described in the Complaint and pointing to specific overt acts in furtherance of the claimed conspiracy.

As to the New York conversion claim, Plaintiff may be able to provide allegations about specific, tangible property that Defendant converted to the exclusion of Plaintiff's rights as well as explaining how Defendant's actions led to the deprivation of Plaintiff's dominion over that property.

## CONCLUSION

In light of my recommendation that Your Honor dismiss the Complaint with leave to replead some of the claims, the motion to stay discovery (ECF 18) is GRANTED; if Plaintiff repleads, I would consider a motion to lift the stay of discovery. The Clerk of Court is respectfully requested to terminate ECF 18.

Dated: July 30, 2026
        New York, NY

So Ordered.

_____
**ROBYN F. TARNOFSKY**
**United States Magistrate Judge**

## CONCLUSION

For the foregoing reasons, I respectfully recommend that Your Honor should GRANT Defendants' motion to dismiss the Complaint, as follows:

- The claims for violation of the DTSA, including for injunctive relief under the DTSA, and for New York law misappropriation of trade secrets, unfair competition, civil conspiracy, and conversion should be dismissed without prejudice.

- The claim for New York law unjust enrichment should be dismissed with prejudice.

32

If Your Honor adopts this recommendation, I further respectfully recommend that Plaintiff should be permitted to file an amended complaint within 30 days. If Plaintiff does not file an amended complaint that attempts to plead a claim under the DTSA, I respectfully recommend that Your Honor should decline to exercise supplemental jurisdiction over any state law claims included in that amended complaint and that Your Honor should dismiss the state law claims without prejudice.

Dated: July 30, 2026
      New York, NY


                                    Respectfully Submitted,

                                    _____
                                    **ROBYN F. TARNOFSKY**
                                    **United States Magistrate Judge**


### <u>NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO REPORT AND RECOMMENDATION</u>

The parties shall have fourteen days (including weekends and holidays) from service of this report and recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. A party may respond to another party's objections within fourteen days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2). Such objections, and any responses to objections, shall be filed with the Clerk of the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Broderick.

34

THE FAILURE TO OBJECT WITHIN FOURTEEN DAYS WILL RESULT IN A WAIVER OF

OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P.

72(b); *Thomas v. Arn,* 474 U.S. 140 (1985).